The fifth, sixth and seventh exceptions are over-
5, 6, 7 ruled, for the reasons stated in overruling the other
exceptions.

Judgment affirmed.

## 9263

### JACKSON v. BREELAND *ET AL.*

### (88 S. E. 128.)

CONSTITUTIONAL LAW. DRAINAGE LAWS. PUBLIC IMPROVEMENTS. ASSESS-
MENTS. TAXATION. MUNICIPAL CORPORATIONS. BONDS. STATUTES.
APPEAL AND ERROR.

1. CONSTITUTIONAL LAW — FEDERAL CONSTITUTION. — The fifth amend-
ment to the Federal Constitution has no application to the State
government.

2. APPEAL AND ERROR—REVIEW.—A proposition of law based upon a
misapprehension as to facts inapplicable.

3. STATUTES—CONSTITUTIONAL LAW.—Civil Code, 1912, ch. XXXII, art.
I, secs. 2187 to 2238, amended 28 Stats. 455, 460; 29 Stats. 199, 249,
with reference to drainage, is general in its operation, and not a
special law in violation of Const., art. III, sec. 34, subd. 14.

4. CONSTITUTIONAL LAW—DUE PROCESS.—The drainage laws, Civil Code,
ch. XXXII, art I, secs. 2187 to 2238, amended 28 Stats. 455, 460; 29
Stats. 199, 249, do not deprive landowners of property without due
process, or deny them equal protection of law in violation of Const.,
art. I, sec. 5.

5. CONSTITUTIONAL LAW—STATUTES—PRIVATE PROPERTY—The drainage
laws, Civil Code, ch. XXXII, art I, secs. 2187 to 2238, amended
28 Stats. 455, 460; 29 Stats. 199, 249, neither take property for private
use without the consent of the owner, nor for public use without
just compensation being first made therefor, in violation of Const.,
art I, sec. 17, or art. IX, sec. 20.

6. CONSTITUTIONAL LAW — STATUTES — DRAINAGE. — The drainage laws,
Civil Code, ch. XXXII, art. I, secs. 2187 to 2238, amended 28 Stats.
455, 460; 29 Stats. 199, 249, enacted pursuant to art. I of amendments
to the Constitution, Feb. 8, 1901, providing for the condemnation of
lands and rights of way necessary for the drainage of lands, and
assessment of damages, provide ample remedies for the assertion and
protection of the rights of all concerned.

7. CONSTITUTIONAL LAW—DRAINAGE—ASSESSMENTS—TAXES—STATUTES.—
Civil Code, ch. XXXII, art. I, secs. 2187 to 2238, amended 28 Stats.
455, 460; 29 Stats. 199, 249, authorizing the creation of drainage dis-

tricts, in which lands are to be drained, where necessary to the public welfare, and the appointment of commissioners, and conferring authority on them to levy assessments. on property specially benefited, to defray the cost of the improvement, does not contemplate the assessment or levy of a tax within the meaning of the Constitution in violation of Const., art. I, sec. 6; art. III, sec. 29, or art. X, sec. 13.

8. PUBLIC IMPROVEMENTS—TAXATION.—The distinction between taxes for the maintenance of the government, and assessments for local improvements is well settled.

9. TAXATION.—Taxes are imposed on property for the maintenance of the government or some division thereof.

10. PUBLIC IMPROVEMENTS—ASSESSMENTS.—Assessments to pay for public improvements are laid only on the property to be benefited thereby.

11. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — BONDS. — Const., art. X, sec. 5, limiting the bonded indebtedness of municipalities, refers to indebtedness for corporate purposes to be paid by taxation, and has no reference to the assessment of property for local improvements.

12. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS.—A drainage district formed pursuant to the drainage laws (Civil Code, ch. XXXII, art. I, secs. 2187 to 2238; Am. 28 Stats. 455, 460; 29 Stats. 199, 249) is not a municipal corporation, political division or subdivision of the State possessing a power to levy a tax or contract a debt, within the meaning of Const., art. X, sec. 5.

13. DRAINAGE—CONSTITUTIONAL LAW—CERTIFICATES OF INDEBTEDNESS.— The bonds to be issued under Const. Amendment I, Feb. 8, 1901, and Civil Code, sec. 2229, for the amount of assessments to pay cost of drainage improvements are mere certificates of indebtedness to be paid by assessments laid on the specific lands to be benefited by the proposed improvements, and are not bonds within the meaning of Const., art. X, sec. 5.

Before PRINCE, J., Orangeburg, November, 1915. Affirmed.

Action for injunction by T. P. Jackson against M. L. Breeland and others, as the board of drainage commis-

FOOTNOTE.—As to what are local improvements for which special assessments may be levied, see note in 20 A. & E. Ann. Cas. 339, and 32 A. & E. Ann. Cas. 1914b, 452; as to creation and status of drainage districts, see notes in 37 A. & E. Ann. Cas. 1915c, 9, 10 L. R. A. 285, 12 L. R. A. (N. S.) 900. Special assessments as a tax, see notes 3 L. R. A. (N. S.) 837, 6 L. R. A. 155, 44 L. R. A. (N. S.) 57. Special assessments as municipal indebtedness, see notes in 59 L. R. A. 618.

sioners for Rum Neck Drainage District. From decree dismissing complaint, plaintiff appeals. The facts are stated in the decree, as follows:

"The complaint herein is for injunction. The allegations of the complaint briefly stated are that the defendants are the duly appointed and qualified board of drainage commissioners for Rum Neck Drainage District, which has been organized under the drainage laws of this State for the purpose of draining certain swamp and lowlands in Orangeburg county, and that the plaintiff is the owner in fee simple and in possession of a tract of land within the limits and bounds of the drainage district which will be affected by the organization of the district, the issuance of bonds and the levy of assessments; and that the drainage commissioners are about to issue bonds and levy assessments pursuant to such drainage laws. These allegations are admitted by the answer of the defendants. The complaint further alleges that the drainage laws of the State are unconstitutional, and, therefore, null and void, upon numerous grounds set forth in the complaint, which will be referred to hereinafter. The answer denies these allegations, but admits that the amount of bonds to be issued is greatly in excess of the amount of eight percentum and much more than fifteen per centum upon the assessed value for taxation of all property located and assessed for taxation in the aforesaid Rum Neck Drainage District.

"Upon hearing the verified complaint herein, I issued a rule requiring the defendants to show cause why they should not be enjoined. The rule and entire case was heard before me, by consent, at my chambers at St. Matthews, S. C., on the 18th day of November, 1915, on the complaint and the answer filed by the defendants by way of return. The matter was argued by counsel on both sides. The case is one of considerable public interest and I have given careful consideration to each of the objections made to the constitutionality of the drainage law.

"In the outset, I am clearly of the opinion, and so hold, that the validity of the drainage law depends upon the amendment to the Constitution of this State, duly approved February 8, 1901, which is as follows:

" 'The General Assembly shall provide by law for the condemnation, through proper official channels, of all lands necessary for the proper drainage of the swamp and low-lands of this State, and shall provide for the equitable assessment of all lands so drained, for the purpose of paying the expenses of such condemnation and drainage.'

"The drainage act and the amendments thereto, I find, were enacted in accordance with this amendment to the Constitution. In my opinion, at least some of the objections urged by the plaintiff, if not all of them, would be well taken, but for this amendment.

"The first objection to the drainage law, as set forth in the complaint, is as follows:

" 'The aforesaid drainage laws deprive the plaintiff and others in like interest of his and their property without due process of law and likewise take his and their private property for public use without just compensation previously made, in violation of article V of amendments to the Constitution of the United States.'

"This objection is not well taken, for the reason, *inter alia,* that the provision of the Federal Constitution referred to has no application to the State government.

The fourth objection is as follows:

" 'The aforesaid drainage laws, when enacted by the General Assembly of South Carolina (a) did not originate in the House of Representatives, as all revenue acts are required to originate; (b) the title relates to more than one subject, and such subject or subjects are not plainly expressed in such title or titles, and (c) were not read three times on three several days in both the Senate and the House of Representatives, in violation of sections

15, 16 and 18 of art. III of the Constitution of the State of South Carolina.'

"These objections were doubtless taken under a misapprehension as to the facts. I find that they are not supported by the official records, and they are, therefore, overruled without further comment.

"The sixth objection is as follows:

" 'The aforesaid drainage laws are special laws, in violation of subd. IX of section 34 of art. III of the Constitution of South Carolina.'

"This objection is overruled, because the drainage acts are not special laws, but are general in their operation.

"The third and ninth objections are as follows:

" 'The aforesaid drainage laws deprive the plaintiff of his property without due process of law, and also denies him equal protection of the law in respect to the full enjoyment and use of his aforesaid property, in violation of section 5 of art. I of the Constitution of South Carolina.'

" 'The aforesaid drainage laws provide for rights of way over and across the property of the plaintiff without his consent, and without due process of law, and without compensation of reasonable amount first made, in violation of section 17 of art. I and of section 20 of art. IX of the Constitution of South Carolina.'

"I hold that these objections are not valid or well taken, for the reason that pursuant to amendment of 1901, above quoted, the drainage act does provide for the condemnation through the proper official channels mentioned in said act of all lands and rights of way necessary for the proper drainage of swamp and lowlands in the said district, and further provides for the assessment of damages claimed by any one that is justly right and due to them for land taken or for inconvenience imposed because of the construction of the improvements, or for any other

legal damage sustained, which shall be considered separate and apart from any benefit to such lands. I further find that the act provides ample remedies for the assertion and protection of the rights of all persons concerned.

"The second, fifth, seventh and eighth objections to the constitutionality of the act in question, are as follows, and will be considered together:

" 'The aforesaid drainage laws allow the taxation of the property of the plaintiff not in proportion to its value, but according to its local and physical condition, in violation of section 6 of art. I of the Constitution of South Carolina.'

" 'The aforesaid drainage laws lay taxes upon the property of the plaintiff without assessment and not upon the actual value thereof, in violation of section 29 of art. III of the Constitution of South Carolina (1895).'

" 'The aforesaid drainage laws allow the levy and collection of taxes not in pursuance to law and without distinctly stating the purpose of such taxation, in violation of section 3 of art. X of the Constitution of South Carolina (1895).'

" 'The aforesaid drainage laws provide for an assessment for taxation different from that upon which taxes for ordinary purposes are levied and collected, in violation of section 13 of art. X of the Constitution of South Carolina (1895).'

"These objections overlook the well established distinction between taxes and assessments. The drainage law does not provide for the levy of taxes, but, pursuant to the aforesaid amendment of 1901, provides for an equitable assessment of lands to be drained. The distinction between taxes and assessments is so well settled on principle and authority that citation of cases is scarcely necessary. See *Illinois Central R. R. Co.* v. *Decatur,* 147 U. S. 190, 13 Sup. Ct. Rep. 293.

"It is very true that in popular parlance, and even in legislative enactments, assessments are frequently called

taxes, but Courts will look behind mere words to find the real meaning. Taxes, in the strict sense of the word, are imposed upon all property, both real and personal, for the maintenance of the government or some division thereof, while assessments are laid only on the property to be benefited by the proposed improvements. This is the vital distinction running through all the cases. These objections are, therefore, overruled.

"The tenth objection is as follows, and will be considered at length:

" 'The aforesaid drainage laws provide for, and the defendants are about to, issue bonds of and for the aforesaid drainage district greatly in excess of fifteen per centum of the assessed value of the property located and situated within the said district in violation of section 5 of art. X of the Constitution of South Carolina (1895).'

"Section 5 of article X of Constitution of 1895, provides that 'the corporate authority of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes.' This is the opening clause of the section. These, and these only, are the political divisions of the State which are given the power to collect taxes. It will be observed that they are not given the power to levy assessments for local improvements, but their power is to collect taxes for corporate purposes, that is to say, taxes for general revenue or governmental purposes. This section then proceeds to provide that the General Assembly shall require all the property, except as therein permitted to be exempted, within municipal corporations, to be taxed for corporate purposes, and for the payment of debts contracted under authority of law, that is to say, for the payment of debts contracted for the corporate purposes of such municipal corporations, and payable from the taxes levied upon all the property except

that exempted by law.    Immediately following this provision, the following language is contained in this section:

" 'The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State shall never exceed eight per cent. of the assessed valuation of all the taxable property therein.'

"There is a further provision that where several political divisions or municipal corporations 'possessing a power to levy a tax or contract a debt' overlap, the maximum debt shall not exceed fifteen per centum upon the entire territory.

"Construing this section as a whole, it is perfectly apparent that the bonded indebtedness therein referred to means indebtedness contracted for corporate purposes pursuant to law and to be paid out of taxes to be levied upon all the property within the corporate boundaries.    It is further apparent that the bonded indebtedness therein referred to has no connection whatever with the assessment of property for local improvement, and the authority of a drainage district to levy and collect assessments for the drainage of swamp and lowlands, and the issuance of so-called bonds therein is not derived from this section of the Constitution or affected thereby.

"I am, furthermore, clearly of the opinion that a drainage district, formed pursuant to the drainage laws of this State, is not a 'political division,' or a subdivision, within the meaning of the Constitution, for the reason that, in my opinion, and I so hold, a political division or subdivision is a division or subdivision of the State invested with governmental functions.    I also hold that the above mentioned sections of the Constitution in the very outset names the political divisions of the State which shall have the power to levy and collect taxes, and no other political division or subdivision are comprehended under the terms of this section.

"While it is true that the drainage law provides for the issuance of bonds, the term bond is not therein used in its strict and technical sense. While the certificates of indebtedness to be issued by the drainage commissioners may be called bonds, they are similar to, and for all practical purposes identical with, paving certificates issued against abutting property for street improvements. They are not, in the strict sense, bonds, for the reason that they are not payable by taxation in the technical sense of that term, that is to say, they are not payable out of the general revenue collected by any political division. They are secured by and are payable only out of the assessments laid on the specific tracts of land to be benefited by the proposed improvements. The drainage law provides for the classification of all lands within the district according to benefits, and the assessments are based upon this classification. According to the terms of the act the assessment 'shall constitute the first and paramount lien, second only to State and county taxes, on the lands assessed,' but they are not liens on all the property of the landowner. There is also a provision that the landowner may pay his assessments in cash, if he so desires. This, in itself, shows that the 'bonds' are not bonds in the strict sense of that term. While it is true that the usual tax machinery of the State is to be used for the collection of these assessments and mandamus may be issued against said county officers requiring the collection thereof, in case of default, this cannot, and does not, make these assessments taxes in the accurate sense of that term. The county officers, upon whom the duty of collecting these assessments is devolved, act rather as the agents of the bondholders.

"I, therefore, hold that the aforesaid objections to the constitutionality of the drainage law should be overruled.

"The views herein expressed are supported by numerous authorities, some of which are as follows: *Sanderlin* v. *Luken,* 152 N. C. 738, 68 S. E. 225; *Houck* v. *Little River*

*Drainage District,* 248 Mo. 373, 154 S. W. 739; *Mudd* v.
*St. Francis Drainage District,* 173 S. W. 825; *Pinellas Park
Drainage District* v. *Kessler, Fla.,* 68 Sou. 668.

"Perhaps the most recent case touching the subject under
discussion is that of *Almand* v. *Pate,* 85 S. E. 909, decided
by the Supreme Court of Georgia on July 17, 1915.    This
case considers the drainage law of Georgia, which appears
to be almost identical with ours, and holds the law consti-
tutional against objections very similar to those urged in
the case at bar, and the provisions of the Constitution of
Georgia, under which these objections were made, appear
to be very much like our own Constitution, so far as the
principles concerned are involved.    The following quota-
tion from this opinion applies very aptly to the question
under consideration:

" 'Under the terms of the drainage act, the bonds which
it is provided the drainage commissioners may issue are not
a general liability upon the drainage district, or payable out
of any general funds it may have; but they are payable out
of assessments previously made upon property benefited
by the local improvement, as provided by the act.    In other
words, the assessment is made upon property for a local
improvement.    The owners of the property have the privi-
lege of paying the assessments within a specific time; and
for the balance unpaid at that time what are called bonds
may be issued by the commissioners.    But taking the act
as a whole, these bonds are only payable from the collection
of the unpaid assessments; and if there is a default for a
certain time in the payment of the bonds, provision is made
for compelling the officers to collect such assessments, so
as to pay the amount of installments due.    It has been held
by a number of authorities that such a bond or certificate,
so payable, does not constitute an indebtedness against the
political division, within the meaning of clauses of State
Constitutions quite similar to our own.    It has sometimes
been suggested that the issuance of such bonds amounted

to a *quasi* assignment of the assessments or its proceeds to the extent necessary for payment.'

"Of course, if the bonds to be issued in behalf of the drainage district constituted a general or primary liability upon all of the property of the district, the result would be different, but such is not the case. In the case of *Duncan* v. *Charleston,* 60 S. C. 532, 39 S. E. 265, cited by counsel for plaintiff, an obligation of the city of Charleston was properly held to constitute a bonded indebtedness, for the reason that it was a corporate debt of the city, and, therefore, was in fact a bond whatever name might be given to it.

"I am of opinion and so hold, that all of the objections set forth in the complaint to the constitutionality of the drainage act, and the amendments thereto, should be, and they are hereby, overruled.

"It is, therefore, ordered, adjudged and decreed, that the rule to show cause issued by me against the defendants on November 15, 1915, be, and it is hereby, discharged, and that the injunction applied for by plaintiff be, and it is hereby, refused; and the complaint dismissed."

The plaintiff appeals upon the following exceptions:

1. Error in holding that the drainage acts of South Carolina do not deprive the plaintiff of his property without just compensation previously made, in violation of article V of amendments to the Constitution of the United States.

2. Error in not holding that the drainage acts of South Carolina allow the private property of the plaintiff to be assessed and taxed, not in proportion to its value, but according to its location and physical condition, which would be in violation of section 6, article I of the Constitution of South Carolina.

3. Error in holding that the drainage acts of South Carolina do not deprive the plaintiff of his property without due process of law, and do not deny him equal protection of

the law in respect thereto, in violation of section 5 of article I of the Constitution of South Carolina.

4. Error in not holding that the drainage acts of South Carolina (a) did not originate in the House of Representatives as all revenue acts are required to originate; (b) that the title thereof relates to more than one subject or subjects and that such subject or subjects are not plainly expressed in such title or titles; and (c) that such act or acts were not read three times on three several days in both the Senate and House of Representatives, in violation of sections 15, 16 and 18 of article III of the Constitution of South Carolina.

5. Error in not holding that the drainage acts of South Carolina lay taxes upon the property of the plaintiff without assessment and not upon the actual value thereof, as is required by section 29 of article III of the Constitution of South Carolina.

6. Error in not holding that the drainage acts are special laws in violation of subd. IX of section 34 of article III of the Constitution of South Carolina.

7. Error in not holding that the drainage acts of South Carolina allow the levy and collection of taxes not in pursuance to law and without distinctly stating the purpose of such taxation, in violation of section 3 of article X of the Constitution of South Carolina.

8. Error in not holding that the drainage acts of South Carolina provide for an assessment for taxation different from that upon which ordinary taxes are based and levied, in violation of section 13 of article X of the Constitution of South Carolina.

9. Error in not holding that the drainage laws of South Carolina allow and provide for rights of way over and across the property of the plaintiff without his consent, without due process of law and without just and reasonable compensation previously made, in violation of section 17

of article I, and section 20 of article X of the Constitution of South Carolina.

10. Error in not holding that the drainage acts of South Carolina are invalid, and also in not holding that the proposed and intended acts of the defendants are invalid and unlawful in so far as it sought and intended to issue drainage bonds in excess of fifteen per centum of the assessed value of all the taxable property located in the aforesaid Rum Neck Drainage District, because the same would be in violation of section 5 of article X of the Constitution of South Carolina.

11. Error in not forever restraining the defendants from issuing the aforesaid drainage bonds for Rum Neck Drainage District.

*Messrs. Wm. C. Wolfe* and *A. W. Summers,* for appellant, cite: 134 U. S. 31; 60 S. C. 554; Const., art. X, sec. 5.

*Messrs. Brantley & Zeigler* and *L. D. Lide,* for respondent.

February 25, 1916.

The opinion of the Court was delivered by Mr. JUSTICE WATTS.

For the reasons stated by his Honor, Geo. E. Prince, Circuit Judge, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Affirmed.